UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| SHEILA P. WELLS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 2:15-CV-64-SPM |
| | ) |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, denying in part the application of Plaintiff Sheila P. Wells ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 13). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

### I. FACTUAL BACKGROUND[1]

Plaintiff was born April 20, 1959. (Tr. 37). On April 22, 2015, Plaintiff testified at a hearing before the ALJ. (Tr. 37-56). On November 10, 2012, at the age of 53, Plaintiff suffered a stroke. (Tr. 37). Since then, she has had headaches a couple of times a week that involve extreme

---

[1] The following is not intended to be an exhaustive summary of the record. The Court focuses on the facts that were addressed by the parties and that are most relevant to the issues raised by the parties.

1

pressure, lasting between a couple of hours and over a day. (Tr. 40-41). She has also had memory problems since the stroke; she will put something on the stove and walk away and forget it, and she has trouble remembering conversations and instructions. (Tr. 41). A few months after the stroke, she developed weakness and pain in both of her arms and shoulders. (Tr. 41-42). She has trouble sleeping because of the pain. (Tr. 43). She has had physical therapy that made her shoulder pain worse, and injections that helped somewhat. (Tr. 44). She took narcotic pain medications, but stopped because she was getting immune to them. (Tr. 45). She uses ice and heat on her shoulder several times a week. (Tr. 46). She can lift about the weight of a gallon of milk in each hand. (Tr. 44-45). Plaintiff also has had problems with her left leg since a "botched" vein surgery. (Tr. 46-47). Her leg burns every day, and it swells up when she is on her feet for less than an hour. (Tr. 47-48). She has carpal tunnel syndrome in her left hand and still has numbness two or three times a day. (Tr. 48-49). She has a lot of pain in her lower back, especially when bending or squatting. (Tr. 50).

Since her stroke, Plaintiff has had weekly therapy sessions. (Tr. 50). She also sees a psychiatrist every two months. (Tr. 55). She gets overwhelmed very easily, and when she cannot remember or understand something, she has anxiety attacks, gets depressed, and starts crying. The crying has improved with medication and occurs four times a week. (Tr. 51-52). Plaintiff has depression and anxiety and takes medications for them. (Tr. 52). She fears drowning when taking a bath and fears accidents when in a car. (Tr. 53). She gets confused easily and does not like being in crowds. (Tr. 56).

Plaintiff's medical records show that on November 11, 2012, Plaintiff suffered a subarachnoid hemorrhage and spent nine days in the hospital. (Tr. 353-54). In the eighteen months following her stroke, Plaintiff frequently sought treatment for a number of physical and

mental problems, including anxiety, fear of having another stroke, depression, crying episodes, problems sleeping, balance problems, headaches, carpal tunnel syndrome, lower extremity weakness, and bilateral shoulder and arm pain. In addition to seeing her primary care physician, a neurologist, a psychiatrist, and a physical therapist, she has had weekly therapy sessions with a counselor, Betty Bockhorst, M.A., L.P.C.

The record contains opinion evidence from two sources. On September 18, 2013, state agency consulting psychologist Mark Altomari, Ph.D., completed a mental residual functional capacity assessment. (Tr. 76-78). Dr. Altomari found that Plaintiff had the ability to understand, remember, and carry out simple instructions; could relate appropriately to coworkers and supervisors; could adapt to most changes in a competitive work setting; and could make simple work-related decisions. (Tr. 78).

On January 16, 2015, Plaintiff's counselor, Betty Bockhorst, completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) for Plaintiff. Ms. Bockhorst opined that Plaintiff had extreme limitations in the ability to understand and remember complex instructions; moderate limitations in the ability to understand and remember simple instructions, carry out complex instructions, make judgments on complex work decisions, interact appropriately with the public, and respond appropriately to usual work situations and to changes in a routine work setting; and mild or no limitations in the ability to carry out simple instructions, make judgments on simple work-related decisions, and interact appropriately with supervisors and co-workers. (Tr. 108-09). Ms. Bockhorst noted that she had to write down any suggestions given to Plaintiff and that if Plaintiff did not have a suggestion written down, she would not remember it. (Tr. 109). Ms. Bockhorst also opined that Plaintiff would be off-task 25% of the time or more; would miss work more than four days per month; and would need to take

unscheduled breaks three to four times a day. (Tr. 109-10). She noted that the symptoms causing a need for breaks were panic attacks, crying spells, anxiety, and depression. (Tr. 110). She opined that Plaintiff's disability began November 10, 2012. (Tr. 110).

## II.    PROCEDURAL BACKGROUND

On January 10, 2013, Plaintiff applied for DIB, alleging that she had been unable to work since November 10, 2012 due to depression, anxiety, a subarachnoid brain hemorrhage, left leg nerve damage, hyperglycemia, memory loss, and fatigue. (Tr. 200-01, 215). Plaintiff's claim was initially denied. (Tr. 85-89). On May 18, 2015, following a hearing, the ALJ issued a partially favorable decision finding Plaintiff was not disabled prior to April 19, 2014, but was disabled after that date. (Tr. 25). On August 20, 2015, the Social Security Administration's Appeals Council denied Plaintiff's request for review. (Tr. 1-6). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## III.   STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. § 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f);

*McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

## IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff had not engaged in substantial gainful activity since November 10, 2012, the alleged onset date; that Plaintiff had the severe impairments of cerebrovascular accident, anxiety, depression, post-traumatic stress disorder, and bilateral shoulder impingement; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 14-15). The ALJ found that after November 10, 2012, Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she could occasionally work overhead with her bilateral upper extremities; could perform simple, routine tasks; could have occasional contact with the public; and could tolerate occasional changes in a routine work setting. (Tr. 17). The ALJ found that Plaintiff was unable to perform her past relevant work. (Tr. 23). Relying on the testimony of a

vocational expert, the ALJ found that prior to April 19, 2014 (Plaintiff's 55th birthday), there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including folding machine operator, garment sorter, and mail clerk. (Tr. 24). However, the ALJ found that beginning on April 19, 2014, a finding of "disabled" was directed by Rule 202.06 of the Medical-Vocational Guidelines (the "Grids"), 20 C.F.R. Part 404, Subpart P, Appendix 2. (Tr. 22-23). Thus, the ALJ found that Plaintiff was not under a disability prior to April 19, 2014, but became disabled that date and continued to be disabled through the date of his decision. (Tr. 25).

## V. DISCUSSION

In her brief, Plaintiff argues generally that the ALJ's finding that Plaintiff was not disabled prior to April 19, 2014 was not supported by substantial evidence, an argument that she supports with a detailed description of her medical records prior to that date. Plaintiff also appears to argue that Plaintiff's age presented a "borderline" situation and that in applying the Grids, the ALJ should have used the age range applicable to individuals over 55 even when assessing the period when she had not yet reached age 55. In her reply brief, Plaintiff also argues that the ALJ erred by applying the Grid without considering and giving weight to the non-exertional limitations in the opinion of her counselor, Betty Bockhorst.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might

accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "'If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)). The court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice." *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quotation marks omitted). "An ALJ's decision is not outside the zone of choice simply because [the reviewing court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.*

### B. The ALJ's Treatment of Plaintiff's Age

Plaintiff's first specific argument is that in applying the Medical-Vocational Guidelines (the "Grids") to her claim, the ALJ did not properly consider the fact that she was in a "borderline" age situation, such that the rule for persons aged 55 or older should have applied to her entire claim, including the period when she had not reached the age of 55.

In applying the Grids, the ALJ must "consider [the claimant's] chronological age in combination with [the claimant's] residual functional capacity, education, and work experience." 20 C.F.R. § 404.1563(a). The regulations describe several age categories, including "person

closely approaching advanced age" (age 50-54) and "person of advanced age" (age 55 or older). *Id.* § 404.1563(d), (e). The Grids state that an individual closely approaching advanced age (age 50-54) who is limited to light work, with no additional limitations, and who has Plaintiff's education and skill level, is considered not disabled. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 202.14. The Grids state that an individual of advanced age (55 or older) who is limited to light work and who has Plaintiff's education and skill level is considered disabled. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 202.06.

In assessing the period before Plaintiff turned 55, the ALJ did not rely on the Grids, because Plaintiff had additional limitations that prevented her from performing all of the demands of light work. Instead, he relied on the testimony of a vocational expert who testified that there were jobs existing in significant numbers that a hypothetical individual of Plaintiff's age, education, work experience, and RFC could perform. (Tr. 24-25). In assessing the period after Plaintiff turned 55, however, the ALJ did apply the Grids and found Plaintiff was disabled. (Tr. 25).

Plaintiff suggests that the ALJ should have treated the period before she turned 55 as if she had already turned 55. As Plaintiff points out, the regulations provide:

> We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

*Id.* § 404.1563(b) (emphasis added). Plaintiff appears to suggest that she was in a "borderline" age situation and that therefore the ALJ should have applied the Grid rule applicable to individuals aged 55 or over to the entire disability period—a period that began more than

9

seventeen months prior to her 55th birthday. That argument is without merit. The regulation on which Plaintiff relies describes an individual who is "within a few days to a few months of reaching an older age category." *Id.* That plainly does not encompass a situation in which the claimant is almost a year and a half away from reaching an older age category. In addition, Plaintiff's argument that a 53-year-old should be treated as someone in the "55 and older category" instead of as someone in the "50-54" category would expand the borderline age concept to a degree that would render the age categories in the Grids meaningless. Moreover, Plaintiff's argument is foreclosed by Eighth Circuit precedent. The Eighth Circuit has noted that "there is no bright line for how many months constitute a borderline case," but that "eight months is too distant to be borderline." *See Byes v. Astrue*, 687 F.3d 913, 918 (8th Cir. 2012). If eight months is too distant to be borderline, seventeen months is as well.

Moreover, the Hearings, Appeals and Litigation Law Manual of the Social Security Administration (HALLEX) makes it clear that Plaintiff's situation is not one where the borderline age policy applies. Here, Plaintiff is not seeking to use the borderline age policy to avoid a complete denial of benefits, but instead to permit her to have a more favorable onset date and expand the number of months for which she can receive retroactive benefits. HALLEX I-2-2-42(A) indicates provides that the borderline age policy may not be used for that purpose. *See* HALLEX I-2-2-42(A), 2016 WL 1167001, at *1 (last updated March 25, 2016) ("NOTE: If using the claimant's chronological age will result in a favorable decision, an administrative law judge (ALJ) will not use the higher age category solely because it will result in a more favorable onset date, determination, or decision for the claimant."). *See also* SSA Program Operations Manual System ("POMS") DI 25015.006, Borderline Age, https://secure.ssa.gov/poms.nsf/lnx/0425015006 (last visited September 27, 2016)

("IMPORTANT: If using the claimant's chronological age would result in a partially or fully favorable determination, only consider the claimant's chronological age. This is not a borderline age situation.").

In her reply brief, Plaintiff argues that "the error really lies in the ALJ merely looking at Plaintiff's exertional limitations (which is when the Grid is used), and not considering the *non-exertional* limitations as set out in the MSS completed by long time treating psychiatric counselor, Betty Bockhorst." Pl's. Reply, Doc. 28, at p. 1. It is unclear how this argument relates to any alleged error related to the Grids or Plaintiff's age. The ALJ only relied on the Grids for his finding that Plaintiff *was* disabled as of her 55th birthday; he did not rely on the Grids to find Plaintiff was not disabled before then. On the contrary, the ALJ specifically noted that he could not rely on the Grids to find Plaintiff not disabled, because Plaintiff had limitations (including non-exertional limitations) that prevented her from performing a full range of light work. (Tr. 24). Thus, with respect to the period prior to Plaintiff's 55th birthday, the ALJ relied on the testimony of a vocational expert rather than on the Grids. (Tr. 24-25). The Court will consider Plaintiff's argument with regard to Ms. Bockhorst's opinion in a separate section below.

### C. The ALJ's Consideration of the Opinion of Betty Bockhorst, M.A., L.P.C.

In her Reply brief, Plaintiff argues that the ALJ erred by not giving adequate weight to the opinion of Betty Bockhorst, M.A., L.P.C., Plaintiff's counselor. Ms. Bockhorst opined that, *inter alia*, Plaintiff had extreme limitations in the ability to understand and remember complex instructions; had moderate limitations in the ability to understand and remember simple instructions, make complex work-related decisions, respond appropriately to usual work situations and changes in a routine work setting, and interact appropriately with the public; could not remember suggestions unless they were written down; would be off task 25% of the time or

more; and would miss work frequently. (Tr. 108-10) The ALJ discussed this opinion and gave it little weight. (Tr. 22).

As Plaintiff acknowledges, Ms. Bockhorst was not an "acceptable medical source," but rather was an "other" medical source. Thus, she was not a "treating source" under the regulations who may offer a medical opinion that is entitled to controlling weight. *See Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006); Social Security Ruling 06-03p ("SSR 06-03p"), 2006 WL 2329939, at *2 (Aug. 9, 2006) (noting that "only 'acceptable medical sources' can give [the Commissioner] medical opinions" and that "only 'acceptable medical sources' can be considered treating sources, as defined in 20 C.F.R. 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight"). The regulations "do not explicitly address how to consider relevant opinions and other evidence from 'other sources.'" SSR 06-03p, 2006 WL 2329939, at *3. However, the ALJ is required to consider such opinions, and the factors to be considered may include the length and frequency of the relationship, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an opinion, how well the source explains the opinion, whether the source has a specialty or area of expertise related to the impairment(s), and other factors. *Id.* at *4-*5. The ALJ has more discretion when evaluating an opinion from an "other" medical source than when evaluating an opinion from an acceptable medical source. *See Tindell*, 444 F.3d at 1005 (citing *Raney v. Barnhart,* 396 F.3d 1007, 1009 (8th Cir. 2005)).

The ALJ's assessment of Ms. Bockhorst's opinion was consistent with the regulations and was supported by substantial evidence. First, the ALJ correctly recognized that although Ms. Bockhorst had seen Plaintiff on numerous occasions, she was not an "acceptable medical source" under the relevant regulations who offered a medical opinion that might be entitled to controlling

weight. Second, the ALJ reasonably found that Ms. Bockhorst's clinical findings did not fully support the severity of the limitations in her opinion. (Tr. 22). As the Commissioner points out, aside from some notations of a depressed affect and/or psychomotor retardation in late 2012 and early 2013, and some later notations that she appeared anxious, the bulk of Ms. Bockhorst's notes contain no clinical findings, just narrative descriptions of Plaintiff's reported issues with her mental and physical health and her issues with family members. (Tr. 423-26, 471-91, 812-56, 1145-60, 1162-86, 1622-27). When Ms. Bockhorst did make mental status examination findings, they were largely unremarkable. (Tr. 414-17). Plaintiff had an anxious mood, slow speech, and tense motor activity, but her attitude was cooperative, her affect was appropriate, she was fully oriented, her immediate and remote memory was intact, her general knowledge was accurate, her judgment was only minimally impaired, her insight was intact, her intelligence was average, she had logical and organized thought processes, and she had no delusions or hallucinations. (Tr. 414-15). The ALJ reasonably found that these clinical findings did not fully support the extreme limitations in Ms. Bockhorst's opinion. For example, Ms. Bockhorst's opinion that Plaintiff had moderate to extreme limitations in the ability to understand and remember instructions is not supported by Ms. Bockhorst's findings of intact recent and remote memory. (Tr. 462). It is also inconsistent with notes from other treatment providers also indicating that Plaintiff's recent and remote memory were intact. (Tr. 511, 515, 698, 902, 910, 917, 925, 1271). Ms. Bockhorst's opinion was also inconsistent with the much more moderate limitations in the opinion of state agency consulting psychologist Mark Altomari, Ph.D., which the ALJ gave "significant weight." (Tr. 22, 76-78).

Finally, the Court notes that the ALJ did not wholly disregard Ms. Bockhorst's opinion of Plaintiff's mental impairments, and his RFC assessment reflects some of the limitations in Ms.

Bockhorst's opinion. The ALJ's finding that Plaintiff was limited to simple, routine tasks is generally consistent with Ms. Bockhorst's opinion that although Plaintiff would have significant problems with regard to complex instructions and complex work-related decisions, she would have no impairment in the ability to carry out simple instructions and only a mild impairment in the ability to make judgments on simple work-related decisions. (Tr. 17, 22, 108). The ALJ also accommodated Ms. Bockhorst's opinion that Plaintiff would have moderate difficulties in interacting appropriately with the public by limiting her to only occasional contact with the public. (Tr. 17, 22, 109). He also accommodated Ms. Bockhorst's opinion that Plaintiff would have moderate difficulties in responding appropriately to changes in a routine work setting by finding that Plaintiff could tolerate only occasional changes in a routine work setting. (Tr. 17, 22, 109).

The ALJ expressly considered Ms. Bockhorst's opinion and gave good reasons, supported by the record, for discounting it. Although Plaintiff suggests that the ALJ should have given the opinion more weight, it is the duty of the ALJ, not the reviewing court, to weigh the opinion evidence in the record and to resolve any conflicts. *See Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) "[I]t is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians.") (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The ALJ's assessment of Ms. Bockhorst's opinion was consistent with the regulations and was supported by substantial evidence.

### D. The ALJ's Decision Is Supported by Substantial Evidence

In addition to the specific arguments presented above, Plaintiff also generally suggests that the ALJ's finding that she was capable of working between November 10, 2012 and April 19, 2014 is not supported by substantial evidence. In her brief, Plaintiff does not specifically

challenge any particular findings the ALJ made in the five-step disability evaluation process. Instead, she provides a chronological summary of the medical evidence during the relevant time period and asserts that it does not support the ALJ's conclusion that there was work she could do during that time period. In her reply brief, Plaintiff appears to focus on Plaintiff's mental impairments, stating, "[t]he anxiety and depression caused by Plaintiff's stroke, which is thoroughly documented in her records show that her inability to work did not arise on her 55th birthday, but from the date of her stroke." Reply, Doc. 28, at pp. 1-2. However, she still does not challenge any specific findings and does not identify any limitations that should have been included in the RFC.

After review of the ALJ's decision and the record as a whole, the Court finds that substantial evidence supports the ALJ's decision. Although Plaintiff argues that she "never recovered" from her stroke in November 2012, the issue is not whether Plaintiff fully recovered, but whether she had an RFC consistent with the ability to perform work. The record contains substantial evidence that she did. As discussed above, although Plaintiff certainly suffered from some anxiety and depression, the ALJ reasonably relied on treatment notes showing that Plaintiff's memory, attention, and concentration were intact and that she was cooperative with her providers (Tr. 462, 511, 515, 698, 902, 910, 917, 925, 1271); evidence that she was able to travel and visit with friends (474, 815-16, 1171, 1294); and medical opinion evidence from the state agency consultant finding that Plaintiff has the ability to understand, remember, and carry out simple instructions; can relate appropriately to coworkers and supervisors; can adapt to most changes in a competitive work setting; and can make simple work-related decisions. (Tr. 78). This evidence supports the ALJ's conclusion that despite Plaintiff's anxiety and depression,

Plaintiff was capable of performing simple, routine tasks; could have occasional contact with the public; and could tolerate at most occasional changes in routine. (Tr. 18-22).

With regard to Plaintiff's physical limitations, the ALJ reasonably considered notes showing that shortly after Plaintiff's stroke, her physician noted that she could not perform any strenuous activity but could perform light activity as tolerated (Tr. 353-54); notes showing that after physical therapy, Plaintiff was able to vacuum and ambulate up and down stairs (Tr. 444); treatment notes showing that since early 2013, Plaintiff's lower extremity strength and range of motion has generally been normal (Tr. 444, 511, 515, 698-99, 902); treatment notes showing that that Plaintiff's upper extremity strength has generally been normal or nearly normal (Tr. 511, 515, 545, 562, 572, 698, 867, 902); treatment notes showing that Plaintiff had a normal gait or only a minimal gait disturbance (Tr. 511, 515, 867, 902); testimony from Plaintiff that she was able to lift the weight of a gallon of milk in each hand (Tr. 45); evidence showing that Plaintiff was able to travel (815-16, 1171, 1294); and a function report showing that Plaintiff was able to do chores such as cleaning, laundry, sweeping, and shopping (Tr. 248-49). This evidence supports the ALJ's conclusion that Plaintiff's physical impairments could be accommodated by a limitation to light work, with the additional limitation that she could only occasionally work overhead bilaterally due to a reduced range of motion in her shoulders. (Tr. 22).

In sum, the Court finds that the ALJ's RFC assessment was supported by substantial evidence. The Court further finds that substantial evidence supports the ALJ's finding at Step Five that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. The ALJ described to the vocational expert a hypothetical individual with all of the limitations in Plaintiff's RFC and asked whether there were any jobs an such such an individual could do, and the vocational expert responded that such an individual would

be able to perform the jobs of folding machine operator (1,510 jobs in Missouri), garment sorter (715 jobs in Missouri), and mail clerk (1,890 jobs in Missouri). (Tr. 58-59). Because the hypothetical question posed to the vocational expert adequately captured the consequences of Plaintiff's impairments that were supported by the record, the response to that hypothetical question constitutes substantial evidence to support the ALJ's finding at Step Five. *See Robson v. Astrue*, 526 F.3d 389, 393 (8th Cir. 2008).

For all of the above reasons, the Court finds that the ALJ's decision was supported by substantial evidence in the record as a whole. The Court acknowledges that Plaintiff has several severe mental and physical impairments and that the record contains conflicting evidence, some of which tends to support Plaintiff's claim. However, the ALJ's decision makes clear that he considered this evidence, and it is not the role of this Court to reweigh that evidence. The ALJ's decision that Plaintiff was capable of a limited range of light work fell within the "zone of choice," and the Court cannot disturb that decision merely because it might have reached a different conclusion. *See Buckner*, 646 F.3d at 556.

## VI.  CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of September, 2016.